J-A21037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROCHELLE POLAO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEUTSCHE BANK NATIONAL TRUST | : | |
| COMPANY, AS TRUSTEE FOR | : | |
| HOLDERS OF THE GSR MORTGAGE | : | No. 2741 EDA 2018 |
| LOAN TRUST 2007-0A1 | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Entered August 22, 2018
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2015-001737

BEFORE: BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: [1]                    **FILED NOVEMBER 13, 2020**

Deutsche Bank National Trust Company, as Trustee for Holders of the

GSR Mortgage Loan Trust 2007-0A1 (hereinafter the "Bank"), appeals from

the August 22, 2018 order granting summary judgment in favor of Ms. Polao

in her quiet title action. After thorough review, we reverse and remand for

proceedings consistent herewith.

The following facts are relevant to our review. On February 26, 2007,

Ms. Polao executed a note in the principal amount of $165,000 on property

located at 218 North Sycamore Avenue, Clifton Heights, Pennsylvania (the

"Property"). The note was secured by a mortgage on the Property. The

_____

[1] This memorandum was reassigned to this author.

mortgage was assigned to Aurora Loan Services ("Aurora") on September 1, 2008.

On December 29, 2008, Aurora commenced an *in rem* mortgage foreclosure action based on Ms. Polao's alleged default. It sought foreclosure based on an accelerated debt of $172,400.98, consisting of principal, interest, and late fees. Following a non-jury trial, the Honorable George A. Pagano entered a verdict in favor of Ms. Polao and against Aurora. **See** Polao's Second Amended Complaint to Quiet Title, 4/13/17, at Exhibit F (Decision, 6/25/12). Judge Pagano did not state the rationale for his decision, although we glean from Ms. Polao's pleadings herein that the "legal status of whether or not the mortgagee . . . was the legal Noteholder was an issue." Polao's Response to the Bank's Motion for Summary Judgment, 6/11/18, at 2 ¶1. On October 31, 2012, judgment was entered pursuant to a *praecipe* filed by Ms. Polao. Aurora did not appeal.

On October 16, 2013, the Bank became the holder of the mortgage on the Property. The Bank filed an *in rem* foreclosure action against Ms. Polao on January 29, 2014, in which it asserted the same date of default as in the prior foreclosure action, and many of the same damages. Shortly thereafter, the Bank discontinued that action without prejudice.

On February 24, 2015, Ms. Polao instituted this quiet title action against the Bank. In her second amended complaint, she alleged, *inter alia,* that the Bank's mortgage was unenforceable due to the prior judgment in her favor in

the 2012 mortgage foreclosure action, and hence, she was entitled to quiet title in the Property. *See* Polao's Second Amended Complaint to Quiet Title, 4/13/17, at ¶¶9-14. The Bank filed preliminary objections in the nature of a demurrer, which were overruled. Thereafter, the parties filed motions for summary judgment. Following a hearing on the parties' motions, the trial court entered an order denying the Bank's motion for summary judgment and granting Ms. Polao's cross-motion for summary judgment.

The Bank timely appealed, and both the Bank and the trial court complied with Pa.R.A.P. 1925. The Bank presents the following issues for our review:

1. Did the [t]rial [c]ourt err in granting summary judgment in [Ms.] Polao's favor on the basis of *res judicata* where the prerequisites for applying *res judicata* were not established and the mortgage was not rendered unenforceable by the decision in the [f]oreclosure [a]ction?

2. Did the [t]rial [c]ourt err in determining that [Ms.] Polao's quiet title action was not premature when there was no pending foreclosure action?

3. Did the [t]rial [c]ourt err in determining that [the m]ortgage was not an installment contract which would allow for a subsequent action for foreclosure for separate and later periods of default?

Bank's Amended Brief at 3.[2]

Our standard of review from the grant of a motion for summary judgment is well-settled: we "may disturb the order of the trial court only

---

[2] On appeal, the Bank does not challenge the trial court's denial of its motion for summary judgment.

where it is established that the court committed an error of law or abused its discretion." **Renna v. PPL Elec. Utils., Inc.**, 207 A.3d 355, 367 (Pa.Super. 2019). "The question of whether summary judgment is warranted is one of law, and thus our standard of review is *de novo* and our scope of review is plenary." **City of Philadelphia v. Cumberland Cty. Bd. of Assessment Appeals**, 81 A.3d 24, 44 (Pa. 2013)). Furthermore, "[s]ummary judgment may be entered only where the record demonstrates that there remain no genuine issues of material fact, and it is apparent that the moving party is entitled to judgment as a matter of law." **Id**. In making that determination, "[w]e view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Renna**, **supra** at 367.

In ruling on the motions for summary judgment, the trial court lamented the "conspicuous lack of binding authority or guidance" in our case law "on the viability of subsequent *in rem* actions when the subject debt had been accelerated in a previous action." Trial Court Opinion, 11/13/18, at 6. It cited several common pleas court decisions, as well as decisions from Ohio and Vermont, for the proposition that where the mortgagee accelerated the debt in the prior foreclosure proceeding, it could not bring a subsequent action seeking collection of the same debt. The trial court predicted that Pennsylvania appellate courts would adopt that reasoning, and held that the doctrine of *res judicata* barred another foreclosure action here because the

- 4 -

debt had been accelerated in the first foreclosure action.[3]  It also rejected Appellant's argument that the mortgage was an installment contract and that suit could be maintained for subsequent breaches.  Those findings were the predicates for the trial court's conclusion that the mortgage obligation was unenforceable, and that Ms. Polao was entitled to summary judgment as a matter of law in the quiet title action.  *Id*.

The following principles inform our review.  The doctrine of *res judicata* is intended "to foreclose repetitious litigation by barring parties from re-litigating a matter that was previously litigated or could have been litigated." ***Wilmington Trust Nat'l Assoc. v. Unknown Heirs***, 219 A.3d 1173, 1179 (Pa.Super. 2019).  Four common elements must exist before the doctrine applies.  There must be "(1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." ***Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.***, 902 A.2d 366, 378 n.9 (Pa. 2006).  In making such a determination, "a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages."

---

[3] Having concluded that the Bank could not enforce its rights in another mortgage foreclosure action, the trial court saw no need to determine whether the twenty year statute of limitations for instruments under seal applied.  It also rejected any notion that Ms. Polao would have to wait twenty years to maintain the quiet title action.

*Dempsey v. Cessna Aircraft Co.*, 653 A.2d 679, 681 (Pa.Super. 1995) (*en banc*). In addition, the prior suit must have resulted in a final judgment on the merits. It is the burden of the party asserting *res judicata* to establish its applicability.[4]

"[A] mortgage is only the security instrument that ensures repayment of the indebtedness under a note to real property." *Bayview Loan Servicing LLC v. Wicker*, 163 A.3d 1039, 1045 (Pa.Super. 2017) (quotation marks omitted). The law is well settled that "[t]he holder of a mortgage has the right, upon default, to bring a foreclosure action." *Bank of America, N.A. v. Gibson*, 102 A.3d 462, 464 (Pa.Super. 2014). In such an action, a plaintiff must demonstrate that it is the holder of the mortgage in question, that the mortgagor defaulted on its obligation to pay principal and interest on the mortgage, and that the mortgage debt is in the amount claimed. *Cunningham v. McWilliams*, 714 A.2d 1054, 1056-57 (Pa.Super. 1998). As this Court explained in *Nicholas v. Hofmann*, 158 A.3d 675, 696 (Pa.Super.

---

[4] Ms. Polao did not argue application of the related doctrine of collateral estoppel, which applies if: "(1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior-proceeding was essential to the judgment." *Wilmington Trust v. Unknown Heirs*, 219 A.3d 1173, 1179 (Pa.Super. 2019) (quoting *R.W. v. Manzek*, 888 A.2d 740, 748 (Pa. 2005)). Collateral estoppel only bars subsequent claims that were actually litigated in the prior action. *Id*. Furthermore, it can be used offensively.

2017), "[m]ortgage foreclosure in Pennsylvania is strictly an *in rem* or '*de terris'* proceeding[,]" the purpose of which is "solely to effect a judicial sale of the mortgaged property."

An action to quiet title, in contrast, is generally brought by a possessor of land against another who has a claim or interest in the land. **See** Pa.R.C.P. 1061(b). The goal of such an action is to compel an adversary to either record, surrender, or satisfy of record, or admit the validity, invalidity or discharge of any document, obligation, or deed affecting any right, title, or interest in land. **See** Pa.R.C.P. 1061(b)(3).

In support of summary judgment in this quiet title action, Ms. Polao argued that the prior judgment in her favor in the 2012 foreclosure proceeding operated as *res judicata* to bar a second foreclosure action. Hence, she contended that the mortgage is unenforceable and she is relieved of the obligation to make continuing payments. Consequently, she claims that she is entitled to quiet title to her property.

Noting that it was Ms. Polao's burden to establish that *res judicata* was applicable, the Bank argues herein that she failed to demonstrate that the prior mortgage foreclosure action and the instant action to quiet title are the same causes of action involving the same issues. Furthermore, the Bank contends that a failed foreclosure action does not automatically confer title upon the mortgagor when the underlying debt has not been satisfied.

In addition, the Bank alleges that the trial court erred in applying the doctrine of *res judicata* offensively to hold that there could be no further litigation relating to the mortgage contract. In support thereof, the Bank relies upon cases from other jurisdictions such as **Singleton v. Greymar Assocs.**, 882 So.2d 1004, 1008 (Fla. 2004), **Fairbank's Capital Corp. v. Milligan**, 234 Fed.Appx. 21 (3d Cir. 2007), and **Afolabi v. Atlantic Mortgage & Investment Corp.**, 849 N.E.2d 1170 (Ind. 2006), for the proposition that subsequent and separate defaults under the note create a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure. **See** Appellant's brief at 19. Furthermore, since there is no pending mortgage foreclosure action, the Bank faults the trial court for focusing hypothetically on whether such an action based on continuing default would be barred by the unsuccessful 2012 foreclosure action. In the Bank's view, even if the mortgage is unenforceable, title to the Property is unaffected.

While this appeal was pending, this Court decided **Wilmington Trust**, **supra**, and the parties sought and received permission to submit supplemental briefs addressing the effect of the decision on the issues herein. In **Wilmington Trust**, a mortgagee filed a mortgage foreclosure action against the mortgagor despite the fact that a predecessor mortgagee had already obtained a judgment in mortgage foreclosure in a prior action. The trial court held that *res judicata* barred recovery for default occurring as of the date of the first mortgage foreclosure judgment, but not for successive actions

based upon subsequent defaults. On appeal, this Court reversed, finding that under the doctrine of merger of judgments, when a mortgage has been foreclosed upon and a judgment of mortgage foreclosure has been entered, the mortgage merges into the foreclosure judgment and no more payments are due, thereby rendering a future default impossible. *Id*. at 1180-81. The mortgagee's remedy was sale of the property.

Ms. Polao cites *Wilmington Trust* for the proposition that when she successfully defended Aurora's earlier foreclosure action "the mortgage merged into her favorable judgment and, thereafter, no obligation remained to make monthly payments." Ms. Polao's Motion for Leave to Supplement Appellee's Brief to Include this Court's Opinion of September 19, 2019 in Wilmington Trust, Etc. v, Unknown Heirs, at 5. She also argues that *Wilmington Trust* supports her contention that the fully litigated foreclosure action operates as a bar to a successive foreclosure action based on a continuing default where the mortgage debt was accelerated in the first action.

The Bank counters that where, as here, the 2012 mortgage foreclosure action did not culminate in a foreclosure judgment, there is no merger as in *Wilmington Trust*. *See* Motion to Supplement Appellant's Reply Brief to Include This Court's Opinion in Wilmington Trust, etc. v. Unknown Heirs, etc., at 5. The Bank cited language in *Wilmington Trust* quoting 59 C.J.S. Mortgages § 722 (West 2018), to the effect that "When a mortgage has been validly and completely foreclosed, it cannot ordinarily be the subject of further

foreclosures." *Id*. Furthermore, according to the Bank, where the mortgagee does not prevail in a mortgage foreclosure action, the mortgage generally remains in effect and additional foreclosure actions can be maintained for subsequent defaults.

Preliminarily, we note the following. The Bank is correct that there is no identity of cause of action between the 2012 foreclosure action and the instant quiet title action that would permit the application of *res judicata.* Clearly, an action to quiet title and a mortgage foreclosure action are not the same causes of action. Generally, they also involve different issues. However, under Pennsylvania law, an action to quiet title can be permissibly joined to a foreclosure action in at least one instance: where both actions turn on the validity of the mortgage. *See*, *e.g.*, *Meara v. Hewitt*, 314 A.2d 263, 264 (Pa. 1974) (permitting action in mortgage foreclosure combined with action to quiet title where all actions turned on common legal question of whether mortgage was valid).

Nor can we determine whether *res judicata* would bar another foreclosure action where the record herein does not contain the record of the 2012 mortgage foreclosure proceeding. *See Washington Federal Sav. & Loan Asso. v. Stein*, 515 A.2d 980, 982 (Pa.Super. 1986) (declining to address claim that *res judicata* barred arguments in second mortgage foreclosure action that were allegedly disposed of in first mortgage foreclosure action where the record of the prior action was not certified to this Court on

appeal).[5] Moreover, the trial court in the 2012 foreclosure action did not state the basis for its decision therein. Although Ms. Polao argues that the court rendered a final decision on the merits in the 2012 foreclosure action, even she acknowledges that the procedural issue of whether Aurora was the proper party to seek foreclosure may have been dispositive of that litigation. Thus, there is no record proof that the 2012 mortgage foreclosure action culminated in a decision on the merits.

We find further that while the mortgage merges into a judgment in favor of the mortgagee in a foreclosure action, thus extinguishing the continuing obligation, the same is not true when the judgment is in favor of the mortgagor. As we have recognized on numerous occasions, there are many reasons why a mortgage foreclosure action fails, and most of the time, the mortgagor is not relieved of his obligation to make payments and the mortgagee is not foreclosed from commencing a successive action.

Our Supreme Court's recent decision in *J.P. Morgan Chase Bank, N.A. v. Taggart*, 203 A.3d 187 (Pa. 2019), informs our analysis in this regard. At issue therein was whether, for purposes of Act 6,[6] each action in mortgage

---

[5] "[A] court may not ordinarily take judicial notice in one case of the records of another case." *Gulentz v. Schanno Transp., Inc.*, 513 A.2d 440, 443 (Pa.Super. 1986).

[6] Act 6 is the shorthand reference to the Pennsylvania Loan Interest and Protection Law, 41 Pa. Stat. Ann. §§ 101 - 605, which relates to the foreclosure of residential mortgages. It requires, *inter alia*, that a holder give

- 11 -

foreclosure must be preceded by a separate pre-foreclosure notice. Thus, the Court started from the premise that successive mortgage foreclosure actions can be maintained. The first mortgage foreclosure action in *Taggart* was dismissed because the mortgagee did not file a timely response to preliminary objections. One year later, that mortgagee assigned the mortgage to JP Morgan, which took no further action on the complaint, and the docket was closed administratively. Thereafter, JP Morgan filed a second mortgage foreclosure action at a new docket number, but did not send a new Act 6 notice. Following a bench trial, a verdict was entered in favor of JP Morgan, post-trial motions were denied, and judgment was entered in mortgage foreclosure.

On appeal, Taggart argued that a new Act 6 notice was required in the second action. This Court rejected that argument, and affirmed, but the Supreme Court reversed. It concluded that Act 6 required a new pre-foreclosure notice "each time the lender initiates a mortgage foreclosure action." *Taggart*, *supra* at 195. The Court reasoned that the amounts necessary to cure the default, the calculation of that amount, and on occasion, the lender's identity and contact information, would differ between the first and second action in mortgage foreclosure. *Id*. at 195. Thus, *Taggart* stands

---

notice to the borrower of its intent to foreclose and specifies what information must be provided.

for the proposition that a new mortgage foreclosure action is not necessarily foreclosed by a prior unsuccessful action.

The only question remaining is whether the trial court herein was correct in predicting that under Pennsylvania law, acceleration of the debt in first action, without more, would preclude the filing of another foreclosure action. That question was recently answered in the negative in **United States Bank Nat'l Ass'n v. Davis**, 232 A.3d 952 (Pa.Super. 2020). Therein, Davis defaulted on her mortgage obligation, and the mortgagee filed a complaint in mortgage foreclosure. At the close of the mortgagee's case, the trial court entered a nonsuit, finding that the mortgagee failed to prove that it provided the requisite Act 91 notice.[7] The mortgagee appealed, but subsequently withdrew the appeal.

Shortly thereafter, the mortgagee filed a new Act 91 notice, followed by a new complaint in mortgage foreclosure. Davis filed a motion for summary judgment alleging that the nonsuit in her favor in the first foreclosure action barred the second foreclosure action pursuant to the doctrine of *res judicata*, an argument very similar to the one advanced by Ms. Polao herein. The trial court granted summary judgment in favor of Davis, holding that the second

_____

[7] Act 91 is the Pennsylvania Homeowner's Emergency Mortgage Assistance Act of 1983, 35 Pa. Stat. Ann. §§ 1680.401c - 1680.412c. It was enacted to establish an emergency mortgage assistance program to prevent widespread foreclosures on residential properties during a period of severe economic recession in the Commonwealth. Act 91 requires that the holder give notice to homeowner of the availability of relief under the program.

mortgage foreclosure action was barred by *res judicata* because when the mortgagee invoked the acceleration clause, the contract became indivisible, and the obligations to pay each installment merged into one obligation to pay the entire balance on the note. This is virtually the same rationale espoused by the trial court herein in support of its grant of summary judgment.

On appeal, this Court reversed. With a nod to **Taggart**, we reasoned that a second foreclosure action on the same mortgage can be a new and distinct cause of action in several important respects, including the amount necessary to cure default as it changes over time due to "interest, late charges, escrow advances, insurance payments, and such[,]" as well as the period of default. **Davis**, **supra** at 957. Acknowledging that there was no Pennsylvania appellate case law directly on point regarding the effect of debt acceleration on the continuing mortgage obligation, this Court found persuasive the cases relied upon by the Bank herein.

We turned first to the unpublished opinion of the Court of Appeals for the Third Circuit in **Milligan**, **supra**, concluding that an earlier foreclosure action does not preclude a later one, even when the mortgage debt was accelerated in the first action. Therein, the prior action seeking acceleration of the debt had been dismissed with prejudice based on the parties' stipulation after settlement. Recognizing that the dismissal technically constituted a decision on the merits for purposes of *res judicata,* that court reasoned that subsequent and separate alleged defaults under the note created a new right

- 14 -

in the mortgagee to accelerate payment. In so holding, the *Milligan* Court adopted the rationale of the Florida Supreme Court in *Singleton*, *supra*, that "the doctrine of *res judicata* does not necessarily bar successive foreclosure suits, regardless of whether or not the mortgagee sought to accelerate payments on the note in the first suit . . . . [T]he subsequent and separate alleged default created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action." *Milligan*, *supra* at 23 (quoting *Singleton*, *supra* at 1008).

Thus, the *Singleton* Court rejected the notion that by invoking the acceleration clause, the obligations to pay each installment merged into one obligation to pay the entire balance on the note, and that *res judicata* operated to bar a successive foreclosure action. Although the prior action constituted a decision on the merits, the *Singleton* Court found that the mortgagee was seeking relief for a different breach. *Id*. at 1007. The Third Circuit in *Milligan* found persuasive the Florida court's reasoning that "[i]f *res judicata* prevented a mortgagee from acting on a subsequent default. . ., the mortgagor would have no incentive to make future timely payments on the note." *Milligan*, *supra* at 23 (quoting *Singleton*, *supra* at 1008).

This Court in *Davis* expressly rejected the Ohio case that the trial court herein found persuasive, in favor of the reasoning espoused in the Third Circuit Court of Appeals in *Milligan* and the Florida Supreme Court in *Singleton*. We decided that *res judicata* did not bar a subsequent foreclosure action because

there was no decision on the merits in the prior action. Since it was a new cause of action, we held it was not barred by Pa.R.C.P. 231(b) ("After the entry of a compulsory nonsuit the plaintiff may not commence a second action upon the same cause of action."). We declined to hold, however, "that a prior foreclosure action can never, in any circumstances, bar a subsequent one." **Davis**, **supra** at 959. We expressly limited our analysis to the facts therein, "a prior action dismissed on procedural grounds and a mortgagor's continuing default on her payment obligations." **Id**.

The trial court's grant of summary judgment in favor of Ms. Polao hinged on its belief that the appellate courts of this Commonwealth would hold as a matter of law that *res judicata* precluded a mortgagee from maintaining a subsequent foreclosure action after an unsuccessful first attempt at foreclosure where the mortgagee accelerated the debt in the first action. Our decision in **Davis** upended the notion that acceleration of the debt *ipso facto* operated to bar the filing of a new mortgage foreclosure action for a different period of default and costs.

In light of the foregoing, we find first that Ms. Polao did not establish that the result of the 2012 mortgage action was a decision on the merits, rather than one founded on procedural grounds. Second, the acceleration of the debt in the failed 2012 foreclosure action did not operate to merge the obligations to pay each installment into one obligation to pay the entire balance, nor did it relieve Ms. Polao of her obligation to make continuing

payments or automatically preclude a second foreclosure action. Third, it is undisputed that Ms. Polao has not made a payment since the prior default. Hence, Ms. Polao failed to establish that the doctrine of *res judicata* precludes the Bank from filing another mortgage foreclosure action based on a different default period and damages, and summary judgment was erroneously entered in her favor in this quiet title action.

For all of the foregoing reasons, we reverse the order granting summary judgment in favor of Ms. Polao and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/20